<div style="writing-mode: vertical">

**United States District Court**

For the Northern District of California

</div>

1

2

3

4

5

6                          IN THE UNITED STATES DISTRICT COURT

7

8                          FOR THE NORTHERN DISTRICT OF CALIFORNIA

9   AVRUM V. GRATCH MD,

10          Plaintiff,                                    No. C 04-03028 JSW

11   v.

12   R. JAMES NICHOLSON, Secretary of the          **ORDER GRANTING**
     United States Department of Veteran's Affairs,  **DEFENDANTS' MOTION FOR**
13                                                    **SUMMARY JUDGMENT**

14          Defendant.
     _____/
15

16          Now before the Court is the motion for summary judgment filed by Defendant R. James

17   Nicholson, Secretary of the United States Department of Veteran's Affairs ("Defendant").

18   Having carefully considered the parties' arguments, the relevant legal authority, and having had

19   the benefit of oral argument, the Court hereby GRANTS Defendant's motion for summary

20   judgment.

21                                  **FACTUAL BACKGROUND**

22          Plaintiff Avrum R. Gratch, M.D. ("Dr. Gratch") was hired as a part-time orthopedic

23   surgeon for the Palo Alto VA and then was terminated seven months later on September 1,

24   2000.  Dr. Gratch, who was sixty-five years old at the time of termination, contends that he was

25   fired because of his age.  Dr. Gratch argues that he was replaced by a younger doctor, Dr. Giori,

26

27

28

1    and that Dr. Gratch was qualified for the full-time position filled by Dr. Giori.  (Opp. Br. at 1.)[1]

2    The Court will address the additional specific facts as required in the analysis.

3                                          **ANALYSIS**

4    **A.    Legal Standard**

5         Summary judgment is proper when the "pleadings, depositions, answers to

6    interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

7    genuine issue as to any material fact and that the moving party is entitled to judgment as a

8    matter of law."  Fed. R. Civ. P. 56(c).  A principal purpose of the summary judgment procedure

9    is to identify and dispose of factually unsupported claims.  *Celotex Corp. v. Cattrett*, 477 U.S.

10   317, 323-24 (1986).

11        The party moving for summary judgment bears the initial burden of identifying those

12   portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine

13   issue of material fact.  *Id.* at 323.  Once the moving party meets this initial burden, the

14   non-moving party must go beyond the pleadings and by its own evidence "set forth specific

15   facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The non-moving

16   party must "identify with reasonable particularity the evidence that precludes summary

17   judgment."  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v.

18   Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)) (stating that it is not a district court's task

19   to "scour the record in search of a genuine issue of triable fact").  If the non-moving party fails

20   to make this showing, the moving party is entitled to judgment as a matter of law.  *Celotex*, 477

21   U.S. at 323.

22

23

24

25        [1] The Court refers to Dr. Gratch's opposition brief rather than the evidence attached to
     the Declaration of Mary Dryovage referenced in Dr. Gratch's opposition brief because Dr.
26   Gratch did not file the Dryovage Declaration or any of the exhibits attached to this
     declaration.  Pursuant to Local Civil Rule 7-3, Dr. Gratch's opposition was due by no later
27   than July 15, 2005.  On July 25, 2005, Defendant filed objections to the Dryovage
     Declaration based on Dr. Gratch's failure to file and on his failure to timely serve the
28   declaration.  To date, Dr. Gratch has not responded to Defendant's objections, nor has Dr.
     Gratch sought leave of Court to file this evidence.

United States District Court

For the Northern District of California

**United States District Court**

For the Northern District of California

**B.      Dr. Gratch's Age Discrimination Claim Does Not Survive Summary Judgment.**

Dr. Gratch brings a claim for age discrimination and contends that Defendant terminated him because of his age.  The Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq*., makes it "unlawful for an employer ... to fail or refuse to hire or to discharge any individual [who is at least 40 years of age] ... because of such individual's age."  *Id.* at §§ 623(a), 631(a).  To succeed on his claim, Dr. Gratch must demonstrate that age actually motivated Defendant's decision to terminate him.  *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141 (2000).

Dr. Gratch bears the initial burden of establishing a prima facie case of discrimination.  If he "establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision.  Then, in order to prevail, Dr. Gratch must demonstrate that Defendant's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory."  *See Schnidrig v. Columbia Machine, Inc.*, 80 F.3d 1406, 1409 (9th Cir. 1996) (citation omitted).  Dr. Gratch may establish a prima facie case either by direct evidence of discriminatory intent or by circumstantial evidence demonstrating he was "(1) a member of the protected class (age 40-70); (2) performing his job in a satisfactory manner; (3) discharged; and (4) replaced by a substantially younger employee with equal or inferior qualifications."  *See Schnidrig*, 80 F.3d at 1410; *see also Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 917 (9th Cir. 1997).

Dr. Gratch contends that he has direct evidence of discrimination, and points to a comment made by Thomas A. Burdon, M.D. in the course of the investigation by the Equal Employment Opportunity Commission.  As discussed below, the Court concludes that the comment was merely a "stray comment" as opposed to direct evidence of discrimination.  However, even assuming *arguendo* that the comment was direct evidence sufficient to demonstrate a prima facie case of discrimination, the Court concludes that Defendant presents evidence of a legitimate nondiscriminatory reason for his termination, which Dr. Gratch fails to demonstrate was pretextual.

**United States District Court**

For the Northern District of California

1. **Defendant Proffers Evidence Demonstrating a Legitimate Nondiscriminatory Reason for Terminating Dr. Gratch**.

Defendant presents evidence of a legitimate non-discriminatory reason supporting Dr.Gratch's termination.  According to Defendant, Dr. Gratch's temporary part-time position was terminated in order to fund a full-time position in which Defendant hoped to place someone who would become a Medical Center Line faculty appointment at Stanford University Medical University.  (Declaration of George Sims, M.D. ("Sims Decl."), ¶¶ 35-36, 42; Declaration of Thomas A. Burdon, M.D. ("Burdon Decl."), ¶ 14-15, 19.)  Medical Center Line faculty positions are non-tenure track appointments given to professors expected to excel in clinical care and clinical teaching, and to make scholarly contributions to their field.  (Declaration of Stuart B. Goodman, M.D. Ph.D. ("Goodman Decl."), ¶ 6.)  Dr. Gratch did not meet the criteria for a Stanford Medical Center Line faculty position.  (Goodman Decl., ¶ 16; Sims Decl., ¶ 42.) On the other hand, Dr. Giori, who Defendant hired to fill the new full-time position, was qualified and has actually obtained such an appointment.  (Goodman Decl., ¶¶ 9-10, 12, 14; Sims Decl., ¶ 42; Burdon Decl., ¶ 10-12, 18, 20.)  Dr. Giori's superior qualifications include his prestigious Mayo Clinic fellowship in reconstructive surgery, his Ph.D in mechanical engineering, and his demonstrated research abilities and contributions.  (Goodman Decl., ¶ 12; Sims Decl., ¶¶ 16, 18, 43; Burdon Decl., ¶ 10-12, 18, 28.)

2. **Dr. Gratch Fails to Create a Genuine Issue of Fact Regarding Pretext**

Because Defendant presents evidence demonstrating a legitimate nondiscriminatory reason for the termination, Dr. Gratch bears the burden to demonstrate Defendant's articulated reason is pretextual.  Dr. Gratch may do so "either [1] directly by persuading the court that a discriminatory reason more likely motivated the employer or [2] indirectly by showing that the employer's proffered explanation is unworthy of credence." *Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1437 (9th Cir.1990) (internal cites and quotations omitted).

Significantly, the same individuals were involved in both hiring and terminating Dr. Gratch within a seven month period.  When the same actors are "responsible for both hiring and firing a discrimination plaintiff, and both actions occur within a short period of time, a strong

United States District Court

For the Northern District of California

1   inference arises that there was no discriminatory motive." *Bradley v. Harcourt, Brace & Co.*,

2   104 F.3d 267, 270-271 (9th Cir. 1996); *see also Coghlan v. American Seafoods Co. LLC.*, 413

3   F.3d 1090, 1096 (9th Cir. 2005) (same-actor inference creates especially steep burden for

4   plaintiff to overcome).  Evidence shows that both Dr. Sims and Dr. Burdon were involved in the

5   decisions to hire and fire Dr. Gratch.  (Sims Decl., ¶¶ 13, 20, 36; Burdon Decl., ¶¶ 21-22,26.)

6   Dr. Gratch does not dispute that Dr. Sims was involved in both decisions.  Rather, he argues that

7   Dr. Burdon was involved only in the decision to terminate his employment.  (Opp. Br. at 6.)

8   However, in the same brief, Dr. Gratch also states that he was hired by *both* Dr. Sims and Dr.

9   Burdon.  (Opp. Br. at 3.)  Morever, Dr. Gratch has not submitted any evidence to support his

10  argument.[2]  The Court therefore concludes that the strong same-actor inference applies here, and

11  that Dr. Gratch's burden in demonstrating pretext is especially steep.  *See Coghlan*, 413 F.3d at

12  1097 (noting that when the same-actor inference applies, evidence is "*rarely*" sufficient to

13  demonstrate pretext and plaintiff must make an "extraordinarily strong showing of

14  discrimination" to defeat the same-actor inference) (emphasis in original).

15                  **i.     Dr. Burdon's Comment is Insufficient to Demonstrate Pretext**

16          To demonstrate pretext, Dr. Gratch relies on a statement made by Dr. Burdon.  After Dr.

17  Gratch was terminated, during the investigation conducted by the Equal Employment

18  Opportunity Commission, Dr. Burdon made the following comment explaining why Dr. Giori

19  was hired:

20

21          [Dr. Giori] has a close association with the Stanford Bioengineering faculty and was
            seen by the School of Medicine and the chief of Orthopedics at the University of being
22          as sort of a shining star in  - - as a young, academic clinical orthopedic surgeon,
            qualifications which Dr. Gratch does not possess.

23  (Declaration of Jonathan U. Lee, Ex. L at p. 316.)  However, in response to a question regarding

24  whether Dr. Gratch was young, Dr. Burdon stated: "Absolutely possible (sic) that Dr. Gratch can

25  be seen as a young person.  It is a frame of mind from my perspective.  I have many different

26

27          [2]     As discussed earlier, Dr. Gratch never filed the Dryovage Declaration.
    Moreover, even if the Court were to consider the exhibits attached to the Dryovage
28  Declaration, such evidence confirms that Dr. Burdon approved the decision to hire Dr.
    Gratch.  (Dryovage Decl., Ex. 3 at p. 192:11-14.)

                                                5

people working in my section, many different ages." (*Id*. at pp. 316-17.)  Dr. Burdon then further clarified that when he said Dr. Gratch did not possess the qualifications referred to in the statement above, youth was not one of the qualifications to which Dr. Burdon was referring. (*Id*. at p. 317.)

The Ninth Circuit has held that similar kinds of statements were merely "stray" remarks and, thus, were insufficient to create a genuine issue of fact regarding age discrimination.  *See Merrick*, 892 at 1438-39 (holding that hiring supervisor's statement that he hired a younger employee over plaintiff because he was "bright, intelligent, knowledgeable young man" was a stray remark insufficient to create an inference of age discrimination); *see also Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1284-85 (9th Cir. 2000) (holding that employer's statement that plaintiff was not "young and promotable" did not give rise to suspicions of age discrimination); *Nesbit v. Pepisco*, 994 F.2d 703, 705 (9th Cir. 1993) (holding that employer's statement that "[w]e don't necessarily like grey hair" did not support inference of discriminatory motive).  Dr. Gratch argues, without any supporting authority, that Dr. Burdon's comment is direct evidence of discrimination, and not a merely a stray remark, because it was made by the decision maker regarding his reasons for terminating Dr. Gratch and hiring Dr. Giori.  (Opp. Br. at 13.)  Dr. Gratch's failure to provide any authority distinguishing Dr. Burdon's comment from those in *Merrick, Coleman,* and *Nesbit* is undermines his claim.  Moreover, here, the Court must view the evidence in light of Dr. Gratch's heightened burden from the same-actor inference. The Court concludes that Dr. Burden's statement characterizing Stanford faculty's view of Dr. Giori and stating that Dr. Gratch was not similarly qualified is a stray remark that is insufficient to create a genuine issue of fact regarding pretext.

### ii.     The Statistical Evidence is Insufficient to Demonstrate Pretext

Finally, Dr. Gratch asserts that statistical evidence demonstrates an inference of discrimination.  Dr. Gratch argues that Defendant's response to interrogatories demonstrate a pattern and practice of reducing the number of physicians based on age.  (Opp. Br. at. 6.)  He points out that prior to 1968 to the present, there were thirty-nine doctors who were appointed and were still employed as of July 14, 2005.  Of these thirty-nine doctors, thirteen, or one-third,

**United States District Court**
For the Northern District of California

1    were forty years or older when appointed.  Of the twenty doctors appointed after 1968 who are

2    still employed, four or twenty percent were forty or older when appointed.  Dr. Gratch then

3    argues that in contrast, sixty-two percent of the doctors whose appointments ended from 1968 to

4    the present were forty or older when separated.  (Opp. Br. at 6-7 (citing Declaration of Charles

5    Stephen Ralston, Ex. 2.))[3]

6         An employee may use proper statistical evidence to demonstrate a pattern and practice of

7    discrimination.[4]  *See Coleman*, 232 F.3d at 1282-83.  However, to create an inference of

8    intentional discrimination, statistics must demonstrate a significant disparity and must eliminate

9    nondiscriminatory reasons for the apparent disparity.  *Aragon*, 292 F.3d at 663 (finding that

10   statistics unsupported by other probative evidence of discrimination was insufficient to show

11   pretext and demonstrate discrimination); *see also Coleman*, 232 F.3d at 1283 (holding that to

12   raise a triable issue of fact regarding pretext based solely on statistical evidence, the statistics

13   "must show a stark pattern of discrimination unexplainable on grounds other than age"); *United

14   States v. Ironworkers Local 86*, 443 F.2d 544, 551 (9th Cir. 1971) (holding that use of statistical

15   evidence "is conditioned by the existence of proper supportive facts and the absence of variables

16   which would undermine the reasonableness of the inference of discrimination which is

17   drawn.").

18

19

20        [3]   In his opposition brief, Dr. Gratch informed the Court that the parties were
     currently before Magistrate Judge Zimmerman regarding Dr. Gratch's motion to compel
21   further responses to his interrogatories on these statistics, and requested additional time to
     file further statistical evidence.  However, Judge Zimmerman subsequently denied Dr.
22   Gratch's motion to compel.  (*See* Docket No. 58.)  Because discovery has now closed, there
     is no basis to support granting Dr. Gratch a continuance to gather more statistical evidence.
23

24        [4]   Although use of statistics is permissible, statistical evidence "rarely suffices to
     rebut an employer's legitimate, nondiscriminatory rationale for its decision to dismiss an
25   individual employee."  *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 663 (9th
     Cir. 2002).  The Ninth Circuit explained this is so because  "in disparate treatment cases, the
26   central focus is less on whether a pattern of discrimination existed [at the company] and more
     how a particular individual was treated and why.  As such, statistical evidence of a
27   company's general hiring patterns, although relevant, carries less probative weight than it
     does in a disparate impact case."  *Id.* at 663 n.6 (citing *LeBlanc v. Great Amer. Ins. Co.*, 6
28   F.3d 836, 848-49 (1st Cir. 1993)).  Thus, "a company's overall employment statistics will, in
     at least many cases, have little direct bearing on the specific intentions of the employer when
     dismissing a particular individual."  *Id.*

**United States District Court**

For the Northern District of California

1  In *Coleman*, the court held that statistics were insufficient to demonstrate discrimination

2  on a motion for summary judgment because they failed to account for other obvious variables,

3  including education and previous positions at the company, that would have affected the

4  statistical analysis.  *Coleman*, 232 F. 2d at 1283 (citing *Rea v. Martin Marietta Corp.*, 29 F.3d

5  1450, 1456 (10th Cir. 1994) (holding that to raise an inference of discrimination, statistical

6  evidence should account for possible nondiscriminatory variables)).  Similarly, here, the

7  statistical evidence submitted by Dr. Gratch in opposition to the motion for summary judgment

8  does not account for possibly nondiscriminatory variables and does not demonstrate a stark

9  pattern of discrimination unexplainable on other grounds.  The list of appointments that ended

10 includes appointments which ended for *any* reason, such as death, disability, retirement,

11 resignation and termination.  (Declaration of Deborrah Sisty, ¶¶ 4, 6-9.)  Thus, it is unclear what

12 portion of appointments were terminated involuntarily.  Without such information, the Court

13 finds that Dr. Gratch's statistical evidence is insufficient to create a triable issue of fact

14 regarding pretext.[5]  Because Dr. Gratch fails to demonstrate that Defendant's articulated reason

15 for terminating him is pretextual, the Court will grant Defendant's motion.

<div align="center">

**CONCLUSION**

</div>

16 For the foregoing reasons, Defendant's motion for summary judgment is GRANTED.

17 **IT IS SO ORDERED.**

18

19

20 Dated: September 20, 2005

21 JEFFREY S. WHITE
   UNITED STATES DISTRICT JUDGE

22

23

24

25

26

---

27 [5] Plaintiff asserted several other arguments regarding pretext, but did not actually file any evidence in support of such arguments.  Even if the Court could consider the Dryovage Declaration that was never filed, the Court has reviewed the citations referenced in Dr.

28 Gratch's opposition brief, and concludes that such evidence is insufficient to demonstrate that Defendant's articulated reason for terminating Dr. Gratch is pretextual.